MB

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ALGIERZ, INC.,

        Plaintiff,

        v.

THE SOURCE OF APPAREL, INC., )
SELAH, USA, INC., JUN KIM, HIP HOP )
TRADING, LLC, HYO S. KWON, JONG SIM YIM )
D&J INTERNATIONAL, INC., JOHN DOE CORP.,)
JOHN DOE, GEN X CLOTHING, INC. GARY SK )
OH, GEN X ECHO B, INC., LA MODA, INC., )
HARRY CHONG, GUR-ZAL, INC., NARINDER )
KAUR, QUARLES II, INC., TODD QUARLES, )
DOUBLE DREAM, BIG T, JOHN DOE, TITO )
TRADE, INC., SAAD ISSA, JOHN DOE CORP., )
JOHN DOE, GODWIN IHEME, JHL COMPANY )
MS, INC., SO WOONG JANG, PCX CORP., SOO )
BONG LEE, KEVIN & J COMPANY, GYUNG W. )
JANG, ICU JENUINE, INC., JEONGSOO CHOI, )
                              )
                              )

        Defendants. )

1:12-cv-05361
Judge John F. Grady
Magistrate Judge Sidney I. Schenkier

**FILED**

JUL - 9 2012

**THOMAS G BRUTON
CLERK, U S DISTRICT COURT**

## VERIFIED COMPLAINT

### PRELIMINARY STATEMENT

1.    When counterfeiters prosper, the creative class loses. That's what this case is about.

2.    Based in Los Angeles, Algierz, Inc. ("Algierz") manufacturers high-end apparel, including t-shirts and hats, that are sold through its website and by authorized hip-hop and urban wear retail vendors throughout the United States (the "Authorized Distributors"). Consumers

desire Algierz shirts because, among other things, they are featured prominently in various music videos of successful rap artists and contain popular hip-hop lyrics.

3.  Algierz is the brand of choice for many rap artists.

4.  Algierz's premier collaboration is with Joseph Wayne McVey (a/k/a "Z-Ro"), who has eight (8) full-length albums that have charted in the Billboard top 200, prompting the *New York Times* to describe him as "one of the most underrated rappers in America." *See* New York Times, *Arts,* May 27, 2007. Many of Algierz's shirts at issue in this case make reference to Z-Ro's music, and Z-Ro's music and videos (directed by Algierz) make reference to Algierz.

5.  Over the course of the past several days and weeks, Algierz has learned of the Defendants' widespread and unauthorized use of Algierz's registered copyrights. The scope and breadth of counterfeiting at issue here is staggering and spans at least twenty (20) states and potentially hundreds of retail outlets.

6.  Below is a side-by-side comparison of two of the legitimate and counterfeit t-shirts:

2





**Counterfeit appears on the left, Authentic Shirt on the right**

7.      Algierz, through express and implied assignments from its President and founder, Dan Algierz, has the exclusive rights under the Copyright Act to, among other things, produce, use, distribute, sell, and enforce each of the registered copyrighted t-shirt designs set forth on Exhibit 1 (the "Copyrighted Works"). The Copyrighted Works are designs that appear on various t-shirts lawfully produced, distributed, and sold by Algierz (the "Authentic Shirts").

8.      The Defendants are in the business of either manufacturing, distributing, and/or selling apparel through online and retail outlets in and around the United States.

9.      None of the Defendants are authorized to produce, manufacture, distribute, sell, or otherwise use any of the Copyrighted Works in any fashion or manner.

10.      In or about June and July of 2012, Algierz learned that the Defendants were manufacturing and/or distributing and/or selling infringing counterfeit copies of t-shirts bearing Algierz's registered copyrighted designs (the "Counterfeits").

11.      Exhibit 1 identifies the various Counterfeits that the Defendants were manufacturing and/or distributing and/or selling as of the filing date of this Complaint. Algierz incorporates the contents of Exhibit 1 into this pleading.

12.      Algierz bring this Verified Complaint for damages and injunctive relief to bring an end to and seek redress for the Defendants' widespread infringement of Algierz's intellectual property rights.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this case is based upon a federal question.

14.     This is an action arising under the Copyright Act, 17 U.S.C. § 101 et. al., Lanham Act §§ 32, 42-43, 15 U.S.C. §§ 1114, 1124-1125, and 19 U.S.C. § 1526.

15.     Venue is proper in this district under 28 U.S.C. §§ 1391 because each of the Defendants distributed unauthorized copies of Algierz' copyrighted works, some of which bear Algierz' registered trademarks, for which Algierz owns exclusive rights.

16.     The Court has personal jurisdiction over the Defendants because they each manufactured, purchased, and/or distributed the Copyrighted Works in this District. Specifically, upon information and belief, Selah USA, Inc., ("Selah"), Jun Kim, Hip Hop Trading, LLC ("Hip Hop Trading"), The Source of Apparel, Inc. ("The Source"), Hyo S. Kwon, D&J International, Inc. d/b/a Sharp Trading ("Sharp Trading"), Jennifer Min, Jong Sim Yim, and Kyungsun Hwang (the "Manufacturing Defendants") manufactured and/or reproduced the Counterfeits in this District before distributing them to John Doe Corporation ("Royal Express"), John Doe, Gen X Clothing, Inc. ("Gen X California"), Gary SK Oh, Gen X Echo, Inc., La Moda, Inc., Gur-Zal, Inc., Narinder Kaur, Quarles II, Inc., Todd Quarles, Double Dream Corporation, Won Il Choe, John Doe Corporation ("Big T"), John Doe, Tito Trade, Inc. ("Tito's), Saad Issa, John Doe Corporation ("Manhattan"), John Doe Corporation ("Mystique Fashion"), Godwin Iheme, JHL Company MS, Inc. ("Skillz"), PCX Corp. ("PCX"), and Soo Bong Lee, Kevin and J Company ("Kevin & J"), ICU Jenuine, Inc. ("ICU") (the "Retail Defendants"). In addition, upon information and belief, the Retail Defendants each knowingly and willfully purchased the Counterfeits from this District. The Retail Defendants that are

Individuals are subject to jurisdiction based upon their role as officers and directors of the corporate Retail Defendants and their related activity in this District.

17.     Algierz reserves the right to amend and modify these roles as the case develops, but the parties have been named as diligently as possible, and in good faith, under the circumstances.

## PARTIES

18.     Algierz is an Idaho corporation with its principal place of business in Los Angeles, California.

19.     Selah is an Illinois corporation who, upon information and belief, maintains its principal place of business at 1501 Carmen Dr., Elk Grove Village, Illinois.

20.     Selah's President is Jun Kim, whose principal place of residence is 639 Elmhurst Rd., Elk Grove Village, Illinois. *See* Exhibit 2, Illinois Secretary of State Corporation File Detail Report.

21.     Hip Hop Trading is an Illinois limited liability company not in good standing with its principal place of business at 6310 Touhy Ave., Suite 102, Niles, Illinois. *See* Exhibit 3, Illinois Secretary of State Corporation File Detail Report.

22.     Hip Hop Trading's corporate managers are Jong Sim Yim and Kyungsun Hwang.

23.     The Source of Apparel, Inc. is an Illinois corporation with its principal place of business in Northbrook, Illinois.

24.     The Source's President is Hyo S. Kwon, who resides at 2472 Greenview Road, Northbrook, Illinois.

25.     D&J International, Inc. d/b/a Sharp Trading ("Sharp Trading") is an Illinois corporation with its principal place of business in Northbrook, Illinois.

26.      Sharp Trading's President is Jennifer Min, who resides at 1582 Greenview Road, Northbrook, Illinois.

27.      John Doe Corporation, a legal entity operating a retail store in Fairfield, Alabama, doing business as Royal Express. ("Royal Express").

28.      John Doe, President of Royal Express.

29.      Gen X California is a California corporation with its principal place of business at 2300 E. 27th Street, Vernon, California.

30.      Gen X California's President is Gary SK Oh.

31.      Gen X Oregon is an Oregon corporation with its principal place of business at 7999 SE Powell Blvd., Portland, Oregon.

32.      Gen X Oregon's President is Gary SK Oh.

33.      La Moda, Inc. ("La Moda") is an Illinois corporation with its principal place of business in Waukegan, Illinois.

34.      La Moda's President is Harry Chong, who resides at 3366 N. Victoria Lane, Waukegan, Illinois.

35.      Gur-Zal, Inc. d/b/a Sunny Mart ("Sunny Mart") is a Michigan corporation with its principal place of business in Kalamazoo, Michigan.

36.      Sunny Mart's President is Narinder Kaur.

37.      Quarles II, Inc. ("Expressions") is a Massachusetts corporation with its principal place of business in Lincoln, Rhode Island.

38.      Expressions' President is Todd Quarles, who resides at 6 Christopher Drive, Lincoln, Rhode Island.

39.     Double Dream Corporation ("Double Dream") is a Texas corporation with its principal place of business in Dallas, Texas.

40.     Double Dream's President is Won Il Choe.

41.     Big T ("Big T") is a Texas corporation with its principal place of business in Dallas, Texas.

42.     John Doe Corporation, a legal entity operating a retail plaza in Dallas, Texas, doing business as Big T Plaza. ("Big T").

43.     John Doe, President of Big T.

44.     Tito Trade, Inc. ("Tito's") is a Texas corporation with its principal place of business in Dallas, Texas.

45.     Tito's President is Saad Issa.

46.     John Doe Corporation, a legal entity operating a retail store at the Citadel Mall in Charleston, South Carolina doing business as Manhattan ("Manhattan").

47.     John Doe, President of Manhattan.

48.     John Doe Corporation, a legal entity that owns Mystique Fashion ("Mystique Fashion"), a retailer with its principal place of business in Fort Worth, Texas.

49.     Mystique Fashion's President is Godwin Iheme.

50.     JHL Company MS Inc. ("Skillz") is a Mississippi corporation with its principal place of business in Meridian Mississippi.

51.     Skillz's President and Secretary is Do Woong Jang.

52.     PCX Corp. ("PCX") is a Massachusetts corporation with its principal place of business in Springfield, Massachusetts.

53.     The President of PCX is Soo Bong Lee, who resides in Kinnelon, New Jersey.

54.    Kevin & J Company ("Kevin & J") is a Georgia company with its principal place of business in Duluth, Georgia.

55.    Kevin & J's President is Gyung W. Jang, who has an office address of 3715 Northcrest Road, Suite 15 Atlanta, GA 30340.

56.    ICU Jenuine, Inc. ("ICU"), a Pennsylvania corporation with its principal place of business in Harrisburg, Pennsylvania.

57.    ICU's President is Jeongsoo Choi, who resides at 1005 Amity Circle Reading PA 19605.

## FACTS

### A. Background

58.    Algierz is the owner of each of the Copyrighted Works set forth on Exhibit 1.

59.    Mr. Algierz has assigned Algierz the right to, among other things, enforce the Copyrighted Works.

60.    Algierz invests heavily in designing its apparel. Each year Algierz incurs substantial costs for design and other costs of content creation, lawful manufacturing and distribution and promotion of the Copyrighted Works to highly demanding consumers who are connoisseurs of uniquely branded apparel.

61.    In addition, Algierz has incurred substantial costs and invested significant amounts of time obtaining the rights to use various hip-hop lyrics originally created by the artist Z-Ro as part of the Works (collectively, the "Branding Efforts").

62.    Algierz's Branding Efforts have been remarkably successful in the industry. For example, Z-Ro's official music video for "Driving Me Wild" (directed by Algierz) has received close to 3 million views on YouTube. The video features Z-Ro wearing one of the Copyrighted

Works and was produced as a promotion for one of the Copyrighted Works. *See* http://www.youtube.com/watch?v=NAa891UirjM&feature=relmfu

63.     The revenue from Algierz's sales of the Copyrighted Works represents the majority of its annual revenues, and is therefore important to its financial health.

64.     Without question, Algierz suffers serious financial injury when its registered copyrights are infringed upon. Algierz has experienced a reduction in the volume of his sales recently, presumably due to the increase in Counterfeit sales. Indeed, a substantial decline in revenue from sales of the Copyrighted Works could cause Algierz to altogether cease production of one or more deserving t-shirts.

65.     This unfortunate result would have an adverse impact on the creation of new t-shirt designs and artistic progress.

**66.**     Both artists and entrepreneurial endeavors like Algierz are deprived of income when their work is unlawfully copied and sold, or when their copyrights are otherwise infringed upon, which can and has had serious financial and creative repercussions for them and their employees.

### B. The Infringing Activity

67.     Selah, Mr. Kim, Hip Hop Trading, The Source, Mr. Kwon, Sharp Trading, Jong Sim Yim, Kyungsun Hwang Kwon, and Ms. Min will be referred to herein as the "Manufacturing Defendants." The other Defendants – hip-hop apparel retailers and the respective individuals who control those entities – will collectively be referred to as the "Retail Defendants." Although those individuals that supervise and control the Retail Defendants are encompassed by the term "Retail Defendants," they may also referred to herein as the

"Individual Defendants" where applicable. In addition, where necessary, the Retail Defendants and Manufacturing Defendants may collectively be referred to as the "Corporate Defendants."

68.     Since at least June 2012, the Manufacturing Defendants commissioned, ordered, purchased distributed, and/or sold the Counterfeits to one or more of the Manufacturing Defendants in this District.

69.     In so doing, the Retail Defendants deliberately evaded legitimate sources of the products in question, and they chose instead to obtain illegal and counterfeit copies of Algierz's products from the Manufacturing Defendants, illegally distributing and reselling such copies to consumers in the United States, in violation of Algierz's intellectual property rights.

70.     The Retail Defendants paid materially less than they would have had they purchased the t-shirts directly from Algierz or from an Authorized Distributor.

71.     At the time that the Retail Defendants purchased and/or obtained the Counterfeits, the Retail Defendants were aware that the Counterfeits were not Authentic Shirts.

72.     After receiving the Counterfeits from the Manufacturing Defendants, the Retail Defendants distributed the Counterfeits as though they were legitimate to a number of consumers in the United States, including consumers in this District.

73.     The Retail Defendants have sold and continue to sell the Counterfeits to consumers for a significant profit, but still well below the price at which Algierz sells the Authentic Shirts.

74.     In so doing, the Retail Defendants profited from their illicit activities at the expense of Algierz's sales of the Authentic Shirts.

75.     The Individual Defendants supervised and controlled the distribution and sale of the Counterfeits, and had a direct financial interest in, and stood to gain a direct financial benefit from the infringing activity.

76.     Upon information and belief, in engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, the Defendants also conspired and acted in concert with one another to accomplish their scheme to commit the above acts, which they knew would violate Algierz's intellectual property rights, including the Copyrighted Works and the Authentic Shirts.

**77.**     Each of the Defendants were and are in a position to benefit economically from their infringement of Algierz's intellectual property rights.

### C. The Counterfeits Are of Inferior Quality

78.     Unlike the Counterfeits, Algierz's Authentic Shirts are crafted using materials of a far higher quality nature than most t-shirt producers, including super heavyweight cotton, metallic and raised inks, and industry-leading adhesives.

79.     At a cursory examination of the Counterfeits, it is immediately apparent they were produced using inexpensive inks and dyes and low-quality printing processes.

80.     Algierz individually wraps each of the Authentic Shirts by using chipboard, which holds the shape of the Authentic Shirts while they are in transit.  Algierz includes branded items like posters and stickers in each shipment of its Authentic Shirts.

81.     The Counterfeits are packaged in bundles of six t-shirts, completely lack any of the branding items included with the Authentic Shirts and do not employ the use of chipboard.

82.     Based on the use of Algierz's registered copyrights, actual and prospective purchasers are likely to believe that the Counterfeits are Algierz's Authentic Shirts.

83.     Because the Counterfeits are inferior, this weakens, blurs, and tarnishes Algierz's copyrights and trademarks. It further injures Algierz's business reputation by causing its intellectual property and goodwill associated with them to be confused or mistakenly associated with a group or series of products of lesser quality, as alleged above and elsewhere herein.

## COUNT I: COPYRIGHT INFRINGEMENT

### (Algierz Against Selah, Hip Hop Trading, The Source, Sharp Trading, Royal Express, Gen X California, Gen X Oregon, La Moda, Sunny Mart, Expressions, Double Dream, Big T, Tito's, Manhattan, Mystique Fashion, Skillz, PCX, ICU, and Jenuine )

84.     Algierz alleges and incorporates paragraphs one through eighty-three as though they were alleged herein.

85.     This is a count for direct copyright infringement against each of the Corporate Defendants, who each violated the Copyright Act by infringing upon Algierz's exclusive rights to produce, reproduce, sell, distribute, transfer ownership, and/or authorize a sale to the public of the Copyrighted Works.

86.     Algierz owns the Copyrighted Works set forth in Exhibit 1.

87.     The Copyrighted Works are wholly original to Algierz and constitute copyrightable subject matter.

88.     Algierz has complied in all respects with the provisions of the Copyright Laws of the United States, 17 U.S.C. §§ 101-810, including, but not limited to, 17 USC § 411, and has secured the exclusive rights and privileges in and to the Copyrighted Works on Exhibit 1.

89.     Algierz has either applied for or secured copyright registration of the Copyrighted Works with the United States Copyright Office. True and correct copies of applications and certificates of registration for the Copyrighted Works are attached hereto as Exhibit 4 (including

the copyright deposit material). Attached hereto as Exhibit 5 are copies of side-by-side photographs of the t-shirts covered by the aforementioned applications and registrations.

90. Algierz is the sole owner of all rights, title and interest in and to the Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to any of the Defendants.

91. By virtue of the fact that Algierz has significant internet presence, attends many of the same trade shows as the Defendants, and is regularly featured in various hip-hop related magazines, videos, and other promotional media, the Defendants clearly had access to Algierz, the Copyrighted Works, and the Authentic Shirts.

92. Generally, the Manufacturing Defendants and the Retail Defendants have all infringed upon Algierz's Copyrighted Works by infringing upon Algierz's exclusive right to produce, reproduce, distribute, transfer ownership, and/or authorize a sale to the public of the Copyrighted Works.

93. Specifically, beginning on an unknown date and continuing as of the date of this filing, the Manufacturing Defendants have infringed upon Algierz's Copyrighted Works by creating t-shirts that are copies of the Copyrighted Works, and manufacturing, distributing, and selling those Counterfeits to the Retail Defendants and others.

94. Beginning on an unknown date and continuing as of the date of this filing, the Retail Defendants have infringed upon Algierz's Copyrighted Works by purchasing, reselling, and distributing the Counterfeits.

95. The Defendants' infringing conduct and activity was and continues to be willful and for the purpose of achieving financial gain.

96.     The Counterfeits are, at an absolute minimum, substantially similar to the Authentic Shirts, and in fact are nearly identical to Algierz's Copyrighted Works.

97.     The Retail Defendants knew or should have known that their purchase, distribution, and/or sale of the Counterfeits were unauthorized and illegal, and/or without the permission, license or consent of Algierz.

98.     The Defendants' actions described above have caused and will continue to cause irreparable harm and damage to Algierz, for which Algierz has no remedy at law.

99.     Unless the Defendants are restrained by this Court from continuing to infringe upon Algierz's registered copyrights, these injuries will continue to occur in the future.

100.    Algierz is accordingly entitled to injunctive relief restraining all Defendants from further infringement.

WHEREFORE, Algierz, Inc. seeks entry of relief as follows:

1.  Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

2.  An accounting and disgorgement of the Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Counterfeits with documents relating to all of the purchases and sales;

3.  That Defendants be required to pay to Algierz such damages as Algierz has sustained as a consequence of the Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Algierz's election, pursuant to 17 U.S.C. § 504;

4.  An order enjoining the Defendants from further infringing upon Algierz's Copyrighted Works, pursuant to 17 U.S.C. § 502;

5.  That the Defendants be required to pay Algierz such damages as Algierz's have sustained as a consequence of the Defendants' unlawful acts as alleged above, including statutory damages or treble damages, pursuant to 15 U.S.C. § 1117;

6. That the Defendants be required to deliver for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including similar variations of, Algierz's respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

7. That Defendants be required to pay actual damages and profits or statutory damages, at Plaintiffs' election, pursuant to 18 U.S.C. § 2318;

8. For prejudgment interest at the applicable rate;

9. Punitive damages;

10. For attorneys' fees costs and costs of suit; and

11. For such other and further relief the Court deems proper.

## COUNT II: CONTRIBUTORY COPYRIGHT INFRINGEMENT

### (Algierz Against Selah, Hip Hop Trading, The Source, Sharp Trading, Royal Express, Gen X California, Gen X Oregon, La Moda, Sunny Mart, Expressions, Double Dream, Big T, Tito's, Manhattan, Mystique Fashion, Skillz, PCX, ICU, and Jenuine )

101. Algierz alleges and incorporates paragraphs one through eighty-three as though they were alleged herein.

102. This is a count for contributory copyright infringement against each of the corporate Defendants, each of whom violated the Copyright Act by knowingly and willfully infringing upon Algierz's exclusive rights to produce, reproduce, sell, distribute, transfer ownership, and/or authorize a sale to the public of the Copyrighted Works.

103. Algierz owns the Copyrighted Works set forth in Exhibit 1.

104. The Copyrighted Works are wholly original to Algierz and constitute copyrightable subject matter.

105.    Algierz has complied in all respects with the provisions of the Copyright Laws of the United States, 17 U.S.C. §§ 101-810, including, but not limited to, 17 USC § 411, and has secured the exclusive rights and privileges in and to the Copyrighted Works on Exhibit 1.

106.    Algierz has either applied for or secured copyright registration of the Copyrighted Works with the United States Copyright Office. True and correct copies of applications and certificates of registration for the Copyrighted Works are attached hereto as Exhibit 5. Attached hereto as Exhibit 6 are copies of photographs of the t-shirts covered by the aforementioned applications and registrations.

107.    Algierz is the sole owner of all rights, title and interest in and to the Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to any of the Defendants.

108.    By virtue of the fact that Algierz has significant internet presence, attends many of the same trade shows as the Defendants, and is regularly featured in various hip-hop related magazines, videos, and other promotional media, the Defendants clearly had access to and knowledge of Algierz, its Copyrighted Works, and the Authentic Shirts.

109.    Generally, the Manufacturing Defendants and the Retail Defendants have all infringed upon Algierz's Copyrighted Works by infringing upon Algierz's exclusive right to produce, reproduce, distribute, transfer ownership, and/or authorize a sale to the public of the Copyrighted Works.

110.    Specifically, beginning on an unknown date and continuing as of the date of this filing, the Manufacturing Defendants have infringed upon Algierz's Copyrighted Works by creating t-shirts that are copies of the Copyrighted Works, and manufacturing, distributing, and selling those Counterfeits to the Retail Defendants and others.

111.     Beginning on an unknown date and continuing as of the date of this filing, the Retail Defendants have infringed upon Algierz's Copyrighted Works by purchasing, reselling, and distributing the Counterfeits.

112.     The Defendants' infringing conduct and activity was and continues to be willful and for the purpose of achieving financial gain.

113.     The Counterfeits are, at an absolute minimum, substantially similar to the Authentic Shirts, and in fact are nearly identical to Algierz's Copyrighted Works.

114.     The Retail Defendants knew or should have known that their purchase, distribution, and/or sale of the Counterfeits were unauthorized and illegal, and/or without the permission, license or consent of Algierz.

115.     Because they manufactured the Counterfeits, the Manufacturing Defendants knew that the Retail Defendants were distributing, and/or selling illegal copies of Algierz's Copyrighted Works.   Certainly, it is not coincidence that the Manufacturing Defendants produced Counterfeits that look exactly like the Authentic Shirts.

116.     In addition, the Manufacturing Defendants knowingly assisted or provided the Retail Defendants with the tools or means for the infringement; specifically, the Manufacturing Defendants provided the Retail Defendants with the Counterfeits for their further distribution and resale.

117.     By providing a retail outlet for the sale and further distribution and dissemination of the Counterfeits, each of the Retail Defendants knowingly assisted or provided the Manufacturing Defendants with the tools or means for the infringement.   Furthermore, the Retail Defendants further supplied the Counterfeits to consumers around the United States.

118.    Upon information and belief, the Retail Defendants knew that the Manufacturing Defendants were producing, distributing, and/or selling illegal copies of Algierz's Copyrighted Works.  The Retail Defendants are experienced, sophisticated retailers who manage operations whose primary function is to sell apparel in the urban wear market.   Given Algierz's prominence and visibility in the urban market, these Retail Defendants had knowledge that they were not purchasing the Authentic Shirts from the Manufacturing Defendants.

119.    By providing a retail outlet for the sale and further distribution and dissemination of the Counterfeits, each of the Retail Defendants knowingly assisted or provided the Manufacturing Defendants with the tools or means for the infringement.   Furthermore, the Retail Defendants further supplied the Counterfeits to consumers around the United States.

120.    The Defendants' actions described above have caused and will continue to cause irreparable harm and damage to Algierz, for which Algierz has no remedy at law.

121.    Unless the Defendants are restrained by this Court from continuing to infringe upon Algierz's registered copyrights, these injuries will continue to occur in the future.

122.    Algierz is accordingly entitled to injunctive relief restraining all Defendants from further infringement.

WHEREFORE, Algierz, Inc. seeks entry of relief as follows:

1. Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

2. An accounting and disgorgement of the Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Counterfeits with documents relating to all of the purchases and sales;

3. That Defendants be required to pay to Algierz such damages as Algierz has sustained as a consequence of the Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Algierz's election, pursuant to 17 U.S.C. § 504;

4. An order enjoining the Defendants from further infringing upon Algierz's Copyrighted Works, pursuant to 17 U.S.C. § 502;

5. That the Defendants be required to pay Algierz such damages as Algierz's have sustained as a consequence of the Defendants' unlawful acts as alleged above, including statutory damages or treble damages, pursuant to 15 U.S.C. § 1117;

6. That the Defendants be required to deliver for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including similar variations of, Algierz's respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

7. That Defendants be required to pay actual damages and profits or statutory damages, at Plaintiffs' election, pursuant to 18 U.S.C. § 2318;

8. For prejudgment interest at the applicable rate;

9. Punitive damages;

10. For attorneys' fees costs and costs of suit; and

11. For such other and further relief the Court deems proper.

## COUNT III: VICARIOUS COPYRIGHT INFRINGEMENT

**(Algierz against Jun Kim, Jong Sim Yim, Kyungsun Hwang, Hyo S. Kwon, Jennifer Min, Gary SK Oh, Harry Chong, Narinder Kaur, Todd Quarles, John Doe, Saad Issa, Godwin Iheme, Do Woong Jang, and Soo Bong Lee)**

123.     Algierz alleges and reincorporates paragraphs one through ninety-three as if they were alleged herein.

124.     This is a count for vicarious copyright infringement against the individuals who had the right and ability to supervise the infringing action of the respective Corporate Defendants they supervise, and their right and ability coalesce with an obvious and direct financial interest in the exploitation of the Copyrighted Works.

125.    Jun Kim had the right and ability to supervise the infringing action of Selah, and that right and ability coalesces with an obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Kim is liable for vicarious copyright infringement.

126.    Hip Hop Trading's corporate managers are Jong Sim Yim and Kyungsun Hwang. Mr. Yim and Mr. Hwang had the right and ability to supervise the infringing action of Hip Hop Trading, and that right and ability coalesces with an obvious and direct financial interest they had in the exploitation of the Copyrighted Works. As a result, Mr. Kim is liable for vicarious copyright infringement.

127.    Hyo S. Kwon had the right and ability to supervise the infringing action of The Source, and that right and ability coalesces with an obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Kwon is liable for vicarious copyright infringement.

128.    Jennifer Min had the right and ability to supervise the infringing action of Sharp Trading, and that right and ability coalesces with an obvious and direct financial interest she had in the exploitation of the Copyrighted Works. As a result, Ms. Min is liable for vicarious copyright infringement.

129.    Harry Chong had the right and ability to supervise the infringing action of La Moda, and that right and ability coalesces with an obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Chong is liable for vicarious copyright infringement.

130.    John Doe is the President of Royal Express. He had the right and ability to supervise the infringing action of Royal Express, and that right and ability coalesces with an

obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Doe is liable for vicarious copyright infringement.

131.    Gary SK Oh is the President of Gen X California and Gen X Oregon. He had the right and ability to supervise the infringing action of Gen X California and Gen X Oregon, and that right and ability coalesces with an obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Oh is liable for vicarious copyright infringement.

132.    Narinder Kaur is the President of Sunny Mart. He had the right and ability to supervise the infringing action of Sunny Mart, and that right and ability coalesces with an obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Kaur is liable for vicarious copyright infringement.

133.    Todd Quarles is the President of Expressions. He had the right and ability to supervise the infringing action of Expressions, and that right and ability coalesces with an obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Quarles is liable for vicarious copyright infringement.

134.    Won Il Choe is the President of Double Dream. He had the right and ability to supervise the infringing action of Double Dream, and that right and ability coalesces with an obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Choe is liable for vicarious copyright infringement.

135.    John Doe is the President of Big T. He had the right and ability to supervise the infringing action of Big T, and that right and ability coalesces with an obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Doe is liable for vicarious copyright infringement.

136.    Saad Issa is the President of Tito's. He had the right and ability to supervise the infringing action of Tito's, and that right and ability coalesces with an obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Issa is liable for vicarious copyright infringement.

137.    John Doe is the President of Manhattan. He had the right and ability to supervise the infringing action of Manhattan, and that right and ability coalesces with an obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Doe is liable for vicarious copyright infringement.

138.    Godwin Iheme is the President of Mystique Fashion. He had the right and ability to supervise the infringing action of Mystique Fashion, and that right and ability coalesces with an obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Iheme is liable for vicarious copyright infringement.

139.    Do Woong Jang is the President of Skillz. He had the right and ability to supervise the infringing action of Skillz, and that right and ability coalesces with an obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Jang is liable for vicarious copyright infringement.

140.    Soo Bong Lee is the President of PCX. He had the right and ability to supervise the infringing action of PCX, and that right and ability coalesces with an obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Lee is liable for vicarious copyright infringement.

141.    Gyung W. Jang is the President of Kevin & J. He had the right and ability to supervise the infringing action of Kevin & J, and that right and ability coalesces with an

obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Jang is liable for vicarious copyright infringement.

142. Jeongsoo Choi is the President of ICU. He had the right and ability to supervise the infringing action of ICU, and that right and ability coalesces with an obvious and direct financial interest he had in the exploitation of the Copyrighted Works. As a result, Mr. Choi is liable for vicarious copyright infringement.

143. The Defendants' actions described above have caused and will continue to cause irreparable harm and damage to Algierz, for which Algierz has no remedy at law.

144. Unless the Defendants are restrained by this Court from continuing to infringe upon Algierz's registered copyrights, these injuries will continue to occur in the future.

145. Algierz is accordingly entitled to injunctive relief restraining all Defendants from further infringement.

WHEREFORE, Algierz Inc. seeks entry of relief as follows:

1. Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

2. An accounting and disgorgement of the Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Counterfeits with documents relating to all of the purchases and sales;

3. That Defendants be required to pay to Algierz such damages as Algierz has sustained as a consequence of the Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Algierz's election, pursuant to 17 U.S.C. § 504;

4. An order enjoining Defendants from further infringing upon Plaintiffs' respective copyrights, pursuant to 17 U.S.C. § 502;

5. That Defendants be required to pay Plaintiffs such damages as Plaintiffs' have sustained as a consequence of Defendants' unlawful acts as alleged above, including statutory damages or treble damages, pursuant to 15 U.S.C. § 1117;

6. That Defendants be required to deliver up for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including confusingly similar variations of, Plaintiffs' respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

7. That Defendants be required to pay actual damages and profits or statutory damages, at Plaintiffs' election, pursuant to 18 U.S.C. § 2318;

8. An order enjoining Defendants from further infringing upon Plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

9. An order preventing the further unfairly competitive acts by Defendants;

10. For prejudgment interest at the applicable rate;

11. Punitive damages;

WHEREFORE, plaintiffs pray that:

1.      The Corporate Defendants, jointly and severally, their officers, employees, agents, servants and attorneys, and all those acting in concert with defendants, be restrained and enjoined during the pendency of this action, and permanently thereafter, from:

a.      printing, preparing, manufacturing, publishing, selling, marketing, distributing, importing into the United States, or displaying for sale any prints, items, objects or reproductions infringing in any manner whatsoever the copyrights in any of the Copyrighted Works.

b.      imitating or otherwise using any of the Copyrighted Works on any materials.

c.      representing to the Corporate Defendants' customers or members of the public that the Corporate Defendants' spurious merchandise emanates from Algierz or is connected with, sponsored by or approved by Algierz; and

     d.      destroying or otherwise disposing of any merchandise that displays or relates to any infringement, simulation, colorable imitation or counterfeit of Algierz's copyrighted works and any business records or other materials relating thereto.

     2.      That Corporate Defendants be required to deliver up for impounding during the pendency of this action, and for destruction thereafter, all presently manufactured items containing likenesses of Algierz's works in its possession or control, and any other articles of any nature infringing Algierz's various copyrights, and all drawings, inks, sketches, digital images, and other material for making such infringing articles.

     3.      That the Corporate Defendants, jointly and severally, be required to pay Algierz their damages as follows:

     a.      all damages suffered by Algierz as the result of the Corporate Defendants' copyright infringements, plus any profits of the Corporate Defendants that are attributable to the said infringements;

     b.      if plaintiffs so elect in place of actual damages, increased statutory damages of $150,000 for each of the Corporate Defendants' infringements of Algierz's copyrights;

     4.      That the Corporate Defendants be required to pay Algierz exemplary damages in the amount of $100,000.

     5.      That the Corporate Defendants pay to Algierz the costs and reasonable attorneys' fees for the prosecution of this action, as mandated by 17 U.S.C. § 505.

     6.      That Algierz have such other and further relief as the Court may deem proper.

Respectfully Submitted,

/s/ Vivek Jayaram, Esq.

Vivek Jayaram, Esq.

Jayaram Law Group, Ltd.
33 N. LaSalle Street
Suite 2900
Chicago, IL 60602
vivek@jayaramlaw.com
Tel: 312.454.2859
Fax: 312.551.0322
Counsel for the Plaintiff

## VERIFICATION

I, Daniel Algierz, the Plaintiff and President of Algierz Inc., have read the foregoing Verified Complaint and hereby declare under penalty of perjury and in accordance with 28 U.S.C. §1746 that the facts alleged therein regarding the Plaintiff are true and correct of my own knowledge and that the facts alleged therein respecting the various defendants were obtained from investigation by Algierz Inc., counsel, and other persons whom I believe are reliable and capable of ascertaining those facts, and on the basis of those diligent investigations, are to the best of my information and belief true.

Executed this 9th day of July, 2012, at Los Angeles, California.

_____
Daniel Algierz

# EXHIBIT 1

| Name | Registration/Application # | Date of Registration/Application |
|---|---|---|
| Get Your Weight Up | 1-760633325 | 5/1/2012 |
| Haterz Got Me Wrong | VA 1-810-543 | 4/14/2012 |
| I'm a Gangsta | 1-760529277 | 5/1/2012 |
| Screwed Up | 1-760633850 | 5/1/2012 |
| We Fly High | 1-761105477 | 5/2/2012 |
| What Doesn't Kill Me, Only Makes Me Stronger | VA 1-810-545 | 4/14/2012 |
| You Don't Work, You Don't Eat | VA 1-810-548 | 4/14/2012 |

# EXHIBIT 2

CORP/LLC – File Detail Report



JESSE WHITE
SECRETARY OF STATE

## CORPORATION FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| **Entity Name** | SELAH USA, INC. | **File Number** | 62936568 |
| **Status** | ACTIVE | | |
| **Entity Type** | CORPORATION | **Type of Corp** | DOMESTIC BCA |
| **Incorporation Date (Domestic)** | 06/12/2003 | **State** | ILLINOIS |
| **Agent Name** | KEVIN S PARK | **Agent Change Date** | 06/12/2003 |
| **Agent Street Address** | 115 S WILKE #200A | **President Name & Address** | JUN W KIM 1639 ELMHURST RD ELK GROVE 60007 |
| **Agent City** | ARLINGTON HEIGHTS | **Secretary Name & Address** | SAME |
| **Agent Zip** | 60005 | **Duration Date** | PERPETUAL |
| **Annual Report Filing Date** | 05/23/2012 | **For Year** | 2012 |

Return to the Search Screen

| Purchase Certificate of Good Standing |
(One Certificate per Transaction)

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

# EXHIBIT 3



JESSE WHITE
SECRETARY OF STATE

## LLC FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| Entity Name | HIP HOP TRADING, LLC | File Number | 02504669 |
| Status | NGS | On | 04/01/2012 |
| Entity Type | LLC | Type of LLC | Domestic |
| File Date | 04/16/2008 | Jurisdiction | IL |
| Agent Name | SUE J. HYUNG | Agent Change Date | 04/16/2008 |
| Agent Street Address | 1247 N MILWAUKEE AVE, STE 304 | Principal Office | 6310 W TOUHY AVENUE, STE A102 NILES, IL 60714 |
| Agent City | GLENVIEW | Management Type | MGR  View |
| Agent Zip | 60025 | Duration | |
| Annual Report Filing Date | 00/00/0000 | For Year | 2012 |
| Assumed Name | INACTIVE - MAXX BEAUTY | | |
| Series Name | NOT AUTHORIZED TO ESTABLISH SERIES | | |

Return to the Search Screen

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

# EXHIBIT 4